**BICHEL OPTICAL LABORATORIES, INC., Plaintiff,**

**v.**

**The MARQUETTE NATIONAL BANK OF MINNEAPOLIS, Defendant.**

**No. 4-70 Civ. 420.**

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 17, 1971.

Levitt, Palmer, Bowen, Bearmon & Rotman, by Lee Bearmon, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Plaintiff corporation alleges that it borrowed money from defendant bank of Minneapolis, Minnesota and on September 20, 1968 executed its renewal promissory note in the amount of $4,000 due in 31 days and bearing interest at the rate of 8% per annum. On that date interest in the amount of $27.56 was paid to defendant in cash. It is alleged that seven days later on September 27, 1968 defendant, under the guise of deeming itself insecure, wilfully and wrongfully seized funds on deposit in plaintiff's checking account and certain collateral in the form of accounts receivable as a result of which plaintiff's obligation to defendant bank was liquidated. Plaintiff claims that the loan was usurious, and that the seizure of funds without foreclosure or notice, was in breach of the agreement between the parties, amounted to a violation of the antitrust laws of the United States and further constituted a violation of the Robinson-Patman Act and plaintiff's constitutional protection against unlawful searches and seizures. It seeks not only a return of the money and property seized, but general and punitive damages. Defendants' motions for summary judgment are directed against the allegation or charge of usury and the averments of a violation of the Robinson-Patman Act.

*Usury.* The allegations as to usury in plaintiff's complaint are conclusory and merely state that interest of $27.56 for a loan of $4,000 for 31 days violates the usury laws. An accompanying affidavit, however, appears to base the claim in part at least on the fact defendant calculated the 8% interest on the basis of a 360 day year rather than on a 365 day year. Defendant claims that as a matter of law plaintiff is not entitled to assert usury as a grounds for recovery. He cites Minn.Stat. § 334.021 which provides "No corporation shall hereafter interpose the defense of usury in any ac-

James B. Lund, Minneapolis, Minn., for plaintiff.

tion." Similar statutes have been adopted in a number of states. See 36 Minn.L.Rev. 774. Plaintiff rejoins with the contention that it is not asserting usury here as a defense to payment but is seeking affirmatively to effect a recovery of damages, claiming that the seizure of the funds on the usurious loan left plaintiff bereft so that it was unable to meet payrolls and expenses and was required to cease business operations.

■ It would seem to the court that the above statute has no real significance unless in effect it removes or repeals usury laws insofar as loans to corporations are concerned. A number of cases considering similar or identical situations from other jurisdictions have so held, Country Motors, Inc. v. Friendly Finance Corp., 13 Wis.2d 475, 109 N.W. 2d 137 (1961); Curtis v. Leavitt, 15 N. Y. 9 (1857); Rosa v. Butterfield, 33 N. Y. 665 (1865); MacQuoid v. Queens Estates, 143 App.Div. 134, 127 N.Y.S. 867 (1911); Penrose v. Canton Nat. Bank, 147 Md. 208, 127 A. 852 (1925). The court concurs in those holdings.

The Wisconsin Supreme Court in *Country Motors, supra,* stated:

"The argument made on behalf of Country Motors would permit a borrowing corporation to interpose the defense of usury in part, i.e., against payment of the portion of the agreed rate in excess of the maximum statutory rate. It seems to us, however, that the 'defense of usury' embraces the proposition that the contract is not to be enforced according to its terms because it calls for interest in excess of the statutory maximum rate, and that the corporation clause must logically mean that a corporation is forbidden to assert that proposition when an action is brought to enforce the contract. If that proposition cannot be asserted, it would then logically follow that the contract will be enforced according to its terms. It would then seem absurd to permit a lender to collect principal and agreed interest from a corporation, but to permit the corporation to recover from the lender three times the amount by which the interest exceeded the statutory rate. *While the words of the clause speak only of denying a defense, we conclude that they imply the denial of an affirmative right of action based upon the same facts.*" 109 N.W.2d at 139–140 [emphasis added]

This ruling renders unnecessary consideration of the additional contention made by defendant that under 12 U.S.C. § 86 recovery in any event would be limited to twice the amount of the interest paid i.e., twice $27.56. See Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U. S. 29, 23 L.Ed. 196 (1875); Haseltine v. Central Bank of Springfield, 183 U.S. 132, 22 S.Ct. 50, 46 L.Ed. 118 (1901); and cases cited at notes 151 and 152 of annotations to 12 U.S.C.A. § 86.

■ Further since Minn.Stat. § 334.-03 provides:

". . . Interest at the rate of one-twelfth of eight percent for every 30 days shall not be construed to exceed eight percent per annum; nor shall the payment of interest in advance of one year, or any less time, at a rate not exceeding eight percent per annum constitute usury . . .",

the court would deem plaintiff's claim doubtful at best since, under 12 U.S.C. § 85, a national bank may charge interest at the rate allowed by the laws of the state where the bank is located.

In any event under Minn.Stat. § 334.-021, it is clear to the court that plaintiff's claim of usury and the allegations in the complaint in relation thereto, i.e., paragraph 8, must be stricken and defendant should have summary judgment as a matter of law that the loan made to plaintiff was not usurious. There is thus no existing material issue of fact involved in plaintiff's usury charge.

■ *Robinson-Patman Act.* The Robinson-Patman Act, 15 U.S.C. § 13, provides in part:

"It shall be unlawful for any person engaged in commerce, in the course of

such commerce, either directly or indirectly, to discriminate in price between different *purchasers of commodities of like grade and quality, where either or any of the purchases* involved in such discrimination are in commerce, where such commodities *are sold* . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly . . .." [Emphasis added]

Plaintiff alleges defendant bank violated this Act. It is defendant's contention first that lending money and charging interest thereon is not the purchase or sale of a commodity, and second, that in any event the actions of Marquette National Bank of Minneapolis do not tend to lessen competition nor to create a monopoly. This latter is of course a fact issue. Defendant's first contention, however, that as a matter of law business done by a bank is not done within the purview of the Robinson-Patman Act is a legal question and not a fact issue. United States v. Investors Diversified Services, 102 F.Supp. 645 (D.Minn. 1951); Baum v. Investors Diversified Services, 409 F.2d 872 (7th Cir.1969); Columbia Broadcasting System, Inc. v. Amana Refrigeration, 295 F.2d 375 (7th Cir.1961).

As Judge Nordbye of this court stated in United States v. Investors Diversified Services, *supra,* though discussing the Clayton Act and not the Robinson-Patman Act:

"It is difficult to conceive of a transaction for a loan of money as being a lease, sale, or contract for sale of a commodity. Certainly, the loan is not a sale in the usual business sense. A sale is an absolute transfer of property or something of value for a consideration from the seller to the buyer. Alworth-Washburn Co. v. Helvering, Commissioner, 1933, 62 App. D.C. 322, 67 F.2d 694, 696. A loan of money, on the other hand, is an advance of money or credit upon an understanding that an equivalent is to be returned to the lender by the borrower on demand or within a specified time. In the United States money is merely a medium of exchange, not something which is bought and sold in exchange for something else. One does not 'sell' money in the usual business sense. Money is used to 'purchase' other articles or things. That is, other articles or things are sold in exchange for money. Money is not sold in exchange for other articles or things. Nor is money 'leased' in the usual sense of that term. When money is loaned, only its equivalent, not the article or thing loaned, is to be returned." 102 F.Supp. at 647.

This language is equally applicable to the case at bar. The court is convinced that the transaction described in the complaint does not come within the ambit of the Robinson-Patman Act, and is not a commodity nor does it involve a sale. The motion to dismiss this cause of action and thereby to strike reference thereto from paragraphs 13 and 14 of the amended complaint must be granted. The court finds this as a matter of law, and therefore there is no material issue of fact for determination at trial.

■ *Plaintiff's Motion to Amend Its Complaint.* Plaintiff first moved to supplement its complaint by adding claims based upon (1) alleged violations of the Constitutions of the United States and the State of Minnesota, and (2) alleged breach of agreement to "forbear" repayment of plaintiff's debt to defendant. Prior to the hearing on its motion, plaintiff moved to amend its motion so as to seek leave to file an amended rather than a supplemental complaint. Such change in the form of the motion was proper since supplemental complaints must be based upon ". . . transactions or occurrences or events which have happened since the date of the pleading . . .." Rule 15(d), Fed.R. Civ.P. Defendant argues that the motion should be denied because neither allegation states a claim upon which relief could be granted.

## 1372

 Plaintiff's reliance upon the due process clauses of the United States Constitution (Amendments 5 and 14) and the Constitution of the State of Minnesota (Article I, sec. 7) is unfounded. Both due process clauses of the Federal Constitution are by their terms restrictions upon the *state* government, not upon private parties as here. Similarly, the Fourth Amendment to the United States Constitution and Article I, sec. 7 of the Constitution of the State of Minnesota are constraints upon the federal and state governments, respectively. The fact that the defendant Bank is a national bank in no way makes it an arm or agent of either government, and there is no allegation that officials of either government were in any way involved. With regard to paragraph 4 of the amended complaint, plaintiff's motion for leave to include such as an allegation is, therefore, denied since it states no claim upon which relief could be based.

 Paragraphs 7(a) and (b) of the proposed amended complaint allege a breach of agreement between plaintiff and defendant whereby " . . . plaintiff would have the use of certain monies and defendant would forbear until October 20, 1968". It appears that this claim seeks to allege a breach of the terms of the alleged renewal notes executed on or about September 20, 1968, or of an agreement surrounding those notes. Clearly, this claim arises out of the same facts as form the basis for the other issues in the lawsuit. Mindful of the liberality with which judicial discretion is to be exercised under Rule 15 of the Fed.R.Civ.P. and perceiving no prejudice to the defendant, the court believes that plaintiff's motion to amend his complaint to add paragraphs 7(a) and (b) should be granted.

 *Plaintiff's Motion for Production of Documents*. Plaintiff seeks to examine closed credit files maintained by the defendant as to those persons on whose obligations the bank has deemed itself insecure prior to maturity. This apparently is an attempt to show treatment of plaintiff differing from the treatment given by defendant to other borrowers and thus a discrimination under the Robinson-Patman Act. Defense counsel admits in open court that it, like all banks, charges a different rate of interest for different borrowers, depending on their credit standing, collateral, length and amount of the loan, and other factors. The court does not believe, in view of the fact that it has stricken the Robinson-Patman allegations from the complaint, that this discovery is either necessary or can produce any relevant evidence. The court thus need not approach the question that the bank's files involving its various borrowers are confidential and privileged. Plaintiff's motion for discovery is thus denied.