Betty and Bernard SMITH, doing business as Shar-Can Enterprises, Plaintiffs,

v.

BEKINS MOVING & STORAGE CO., Defendant.

Civ. A. No. 74-1339.

United States District Court, E. D. Pennsylvania.

Nov. 25, 1974.

I. I. Jamison, Goodis, Greenfield, Henry, Shaiman & Levin, Philadelphia, Pa., for plaintiffs.

Denis V. Brenan, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiffs, Betty and Bernard Smith, instituted this civil rights action under Section 1983, Title 42 U.S.C., to enjoin defendant, Bekins Moving and Storage Co., from conducting a warehouseman's sale of plaintiffs' stored possessions pursuant to Section 7–210 of the Pennsylvania Uniform Commercial Code. Pa. Stat. tit. 12A § 7–210. Plaintiffs contend that this provision is unconstitutional because it fails to comply with the basic procedural due process requirements enunciated in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Under Section 7–210, a warehouseman may enforce his lien on stored property to satisfy unpaid charges by selling the property at a public or private sale.[1] Although Section 7–210 requires notice to all persons known to claim an interest in the goods, no provision is made for a hearing prior to sale, judicial or otherwise. On this ground, plaintiffs argue that the statute is constitutionally deficient.

■ After a hearing on May 31, 1974, a preliminary injunction was entered staying the scheduled Bekins sale. In reaching the conclusion that the plaintiffs would probably succeed on the ultimate merits of the case, reliance was based in part on the decision of Judge Bechtle in Gibbs v. Titelman, 369 F. Supp. 38 (E.D.Pa.1973), which held that certain state statutory provisions authorizing creditors to summarily repossess and sell property subject to a valid security agreement without prior notice and opportunity for a hearing violated due process. On appeal, the Third Circuit reversed the *Gibbs* decision in an opinion filed August 1, 1974. Gibbs v. Titelman, 502 F.2d 1107 (3d Cir. 1974). In that opinion, the Third Circuit did not reach the due process issue holding that the actions of the creditors under the challenged statutes were not actions "under color of state law". Therefore, no cause of action under Section 1983 of the Civil Rights Act was alleged. Citing *Gibbs*, defendant Bekins has moved to dismiss the instant complaint for failure to state a claim upon which relief can be granted on the ground that it fails to satisfy one of the elemental requirements of Section 1983, "state action."[2] In view of the latest expression of the Third Circuit in *Gibbs*, the defendant's motion to dismiss will be granted.

■ Although the *Gibbs* court dealt with the repossession and sale provisions of the Pennsylvania Motor Vehicle Sales Finance Act, Pa. Stat. tit. 69 §§ 623, 624, 625, 626 and 627 and the Pennsylvania Uniform Commercial Code, Pa. Stat. tit. 12A §§ 9–503 and 9–504, the warehouseman's sale provisions of Section 7–210 are significantly analogous for purposes of "state action" analysis. Similar to the statutory provisions in

---

1. Section 7–209 of the Pennsylvania Uniform Commercial Code grants a warehouseman a lien on all goods covered by a warehouse receipt or the proceeds thereof for all storage charges and expenses. This lien was also recognized at common law. Vol. 93, C.J.S. Warehousemen and Safe Depositaries § 63; Vol. 39, Pennsylvania Law Encyclopedia, "Warehousemen," § 7. In addition, the storage contract entered into between plaintiffs and defendant specifies that Bekins shall have a general lien upon any and all property deposited with it. ¶ 11, "Non-Negotiable Warehouse Receipt and Contract," Defendant's Exhibit 1. In this action, however, plaintiffs have only challenged the constitutionality of the warehouseman's sale provisions of Section 7–210 and not warehouseman's lien provisions of Section 7–209.

2. It is not disputed that Section 1983 requires a defendant to have acted "under color of state law." The "under color of state law" requirement of Section 1983 is the same as the "state action" requirement of the fourteenth amendment. *Gibbs, supra* at 1110.

*Gibbs,* the warehouseman's sale provisions do not involve the participation, aid or intervention of any state officials. Thus, "state action" cannot be premised on the direct involvement of state officials in the statutory scheme and those cases dealing with creditor remedy statutes which require the direct participation of state officials in the statutory process are inapplicable. In those cases "state action" was present on the basis of direct state involvement. *Gibbs, supra* at 1110. *See, e. g.,* Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In the absence of direct state involvement, the *Gibbs* court concluded that the mere passage of a self-help creditor remedy statute did not in and of itself constitute "state action" unless the state, by enacting the legislation, had formed a "symbiotic relationship" with creditors within the doctrine of Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), or had encouraged and fostered the self-help creditor activities within the doctrine of Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967) and Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L. Ed.2d 627 (1972), or had delegated a traditional state function within the doctrine of Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). A similar "state action" approach has been taken by other circuit courts in cases dealing with similar self-help creditor remedy statutes. *See, e. g.,* Nichols v. Tower Grove Bank, 497 F.2d 404 (8th Cir. 1974); Nowlin v. Professional Auto Sales, Inc., 496 F.2d 16 (8th Cir. 1974); James v. Pinnix, 495 F.2d 206 (5th Cir. 1974); Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974); Shirley v. State National Bank of Connecticut, 493 F.2d 739 (2d Cir. 1974); Adams v. Southern

California First National Bank, 492 F.2d 324 (9th Cir. 1973); Bichel Optical Laboratories, Inc. v. Marquette National Bank, 487 F.2d 906 (8th Cir. 1973). *See also* Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927 (1st Cir. 1974). Applying this "state action" standard, the *Gibbs* court concluded that the repossession and sale provisions of the Pennsylvania Motor Vehicle Sales Finance Act and the Pennsylvania Uniform Commercial Code did not satisfy the "state action" requirements of Section 1983 under any of the above theories. Section 9–504 of the Pennsylvania Uniform Commercial Code, which was one of the provisions involved in *Gibbs,* authorized secured parties to sell, lease or otherwise dispose of collateral after default in satisfaction of the indebtedness secured by the security interest. The Third Circuit held that this section failed to meet the "state action" requirements of Section 1983. Section 7–210 of the Pennsylvania Uniform Commercial Code, which is under attack here, authorizes a warehouseman to sell stored items in satisfaction of unpaid charges. The creditor rights conferred by these sections are virtually identical. The procedural requirements for sale are also substantially identical.[3] If the actions of secured parties in selling collateral under Section 9–504 are considered private actions and not "under color of state law," then the actions of warehousemen in selling stored items under Section 7–210 must also be considered private actions.

It must be noted that the *Gibbs* court specifically limited its holding to situations in which the contracts and agreements in issue also authorized the self-help remedies utilized. *Gibbs, supra* 502 F.2d at 1113 n. 15a. In the instant case, the storage contract entered into between plaintiffs and defendant specifies that Bekins shall have a general lien upon all stored property with the right to sell the property upon default. ¶ 11, "Non-Negotiable Warehouse Re-

---

3. *Compare* Section 9–504(3) of the Pennsylvania Uniform Commercial Code with Section 7–210(1), (2) of the Pennsylvania Uniform Commercial Code.

ceipt and Contract", Defendant's Exhibit 1. To the extent, therefore, that the holding in *Gibbs* is restricted to situations in which the self-help remedy is contractual as well as statutory, that requirement is satisfied.

The preliminary injunction issued on May 31, 1974 must, therefore, be vacated and the complaint dismissed for failure to allege a valid claim upon which relief can be granted under Section 1983 of the Civil Rights Act.